FILED
2008 Dec-09 PM 02:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Rebecca L. Snow, | ) |
|     Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 08-G-0366-S |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Rebecca L. Snow, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this

court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases. These problems have been recognized by the courts. In Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. See Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995 708-09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995); Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306-307.  Other courts have also recognized that fibromyalgia can be disabling. Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its illusive nature, the presence of fibromyalgia can be objectively verified in some cases.  As noted in Sarchet, there are tender areas, or "trigger points," which are well defined and cause pain upon palpitation.  Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed.  Kelly at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections).  Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

## DISCUSSION

The court has carefully reviewed the record and finds that the decision of the ALJ must be remanded for further development of the record.  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record.  This obligation exists even if the claimant is represented by counsel, or has waived the right to representation."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)(citations omitted).  Because of the Commissioner's duty to develop the medical record fully and fairly "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."  Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988)(quoting Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (internal quotation marks omitted). In the present case the ALJ failed to

properly develop the record with respect to the underlying medical cause of the plaintiff's allegations of disabling pain.

The record reveals that Dr. Denver examined the plaintiff initially on March 21, 2006. His examination note states that he reviewed records from Dr. Hammer, which indicated the plaintiff had also been under the care of Dr. Pike. Neither of these doctors' treatment notes are part of the record. On examination Dr. Denver found eight out of 18 fibromyalgia trigger points. Record 202. Dr. Denver found no positive Waddell's signs when he examined the plaintiff.[1] Dr. Denver also suspected the presence of depression. Record 203. Dr. Denver's treatment recommendation included a neuropsychological evaluation with Dr. Azrin "in order to obtain a more thorough psychiatric profile and to identify possible nonorganic factors contributing to pain." Record 203. Subsequent treatment notes from Dr. Denver show that he diagnosed "[p]ossible diabetic peripheral neuropathy." Record 195.

The ALJ discussed Dr. Denver's treatment note, but placed undue emphasis on Dr. Denver's observation that the plaintiff's cervical and lumbosacral scans were essentially

---

[1] A positive Waddell's test indicates the presence of nonorganic problems for patients with lower back pain. See "Screening for Psychological Factors in Patients With Low Back Problems: Waddell's Nonorganic Signs" (Adapted from: Scalzitti DA. "Screening for Psychological Factors in Patients with Low Back Problems: Waddell's Nonorganic Signs." Phys Ther. 1997;77:306-312.) viewed at: http://www.orthoteers.co.uk/Nrujp~ij33lm/Orthspinelbp2.htm  However, "[a] physical problem may coexist with the presence of nonorganic signs," and "[a]ccording to Waddell et al, nonorganic signs by themselves should not be equated with malingering or the presence of a psychological problem." Id. (footnote omitted).

normal. Record 18. Although Dr. Denver did not diagnose fibromyalgia, his finding of eight of 18 trigger points suggest fibromyalgia might be the cause of plaintiff's allegedly disabling pain. The ALJ's decision improperly emphasized the normal MRI scans in light of the strong possibility that the plaintiff might have fibromyalgia. Fibromyalgia can clearly cause disabling pain. See, Stewart v. Apfel, 245 F.3d 793, 2000 U.S. App. Lexis 33214 (11th Cir. December 20, 2000) (unpublished decision) (court of appeals reversed and remanded for award of benefits based upon opinions of plaintiffs's doctors that she was unable to work due to fibromyalgia). The court in Stewart emphasized that the Social Security Administration has acknowledged that fibromyalgia is not detectable through diagnostic tests but rather through medically accepted clinical techniques that show the existence of an impairment. 2000 Lexis 33214 at *8.

The ALJ ordered a consultative examination by an orthopedic surgeon, Dr. Harris and utilized a medical expert at the hearing. However neither of these doctors was a rheumatologist. Furthermore, the ALJ heavily relied on Dr. Beezy, the medical expert, in her decision. In particular the ALJ noted that Dr. Beezy "pointed out that x-rays and magnetic resonance images are unimpressive, there is no evidence of any fractures, the objective findings are limited, and there are limited arthritis findings to explain the claimant's pain." Record 17.

In spite of the strong evidence suggesting the plaintiff's pain was due to either diabetic neuropathy, a nonorganic psychological etiology, or fibromyalgia, the ALJ improperly emphasized the MRI scans. She failed to properly develop the record by

obtaining a consultative examination from a rheumatologist, who would be the appropriate medical specialist to assess whether the plaintiff suffers from fibromyalgia.  The ALJ also failed to obtain the treatment records from Drs. Hammer and Pike, which might further explain the nature of the plaintiff's impairment.   Therefore, the court will order the action remanded for completion of the medical record, to include a consultative examination by a rheumatologist at the Kirklin Clinic, which is recognized nationally in the field of rheumatology.  The record does not reveal whether the plaintiff was in fact examined by Dr. Azrin, who is presumably a neuropsychologist.  Should the completed medical treatment record not contain a psychological evaluation, such an evaluation shall be obtained.

       An appropriate order will be entered contemporaneously herewith.

       DONE and ORDERED 9 December 2008.

                                      UNITED STATES DISTRICT JUDGE
                                           J. FOY GUIN, JR.